In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00867-CV






FREDERICK DEWAYNNE WALKER, Appellant


V.


TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
Appellee






On Appeal from the 314th District Court

Harris County, Texas

Trial Court Cause No. 2006-06952J








O P I N I O N

 After a bench trial, the trial court terminated the parental rights of appellant,
Fredrick Dewaynne Walker ("Walker"), to his minor son, W.J.W., and named the
Texas Department of Family and Protective Services ("DFPS") sole managing
conservator of W.J.W. See Tex. Fam. Code Ann. § 161.001 (Vernon 2008). On
appeal, Walker challenges whether the evidence was legally and factually sufficient
to support the termination of his parental rights and whether he was denied the
effective assistance of trial counsel. We affirm. 

Background

 On July 19, 2006, Walker's wife, Lauressa, gave birth to W.J.W. in Houston.
Because both W.J.W. and Lauressa tested positive for cocaine at the time of birth, the
hospital made a referral to DFPS. Lauressa admitted to hospital staff that she had used
cocaine as recently as three days before W.J.W. was born, and the staff reported to
DFPS that Walker had appeared to be intoxicated when he arrived at the hospital.
Neither Walker nor Lauressa had any identification, money, or paperwork on them.
When questioned by the DFPS caseworker at the hospital, Walker admitted that he
had used drugs in the past and that he and Lauressa had three older children who were
already in CPS custody in Florida. The DFPS caseworker also noted that Walker and
Lauressa were homeless. 

 Based on evidence that (1) both Lauressa and W.J.W. tested positive for
cocaine at W.J.W.'s birth, (2) the parents were homeless, and (3) both parents had
previous criminal, drug, and CPS histories, DFPS requested to be named W.J.W.'s
sole managing conservator. W.J.W. was then placed in a foster home. On August 3,
2006, the court signed an order requiring Walker to comply with each requirement
set out in the DFPS service plan during the pendency of the suit, pursuant to section
263.106 of the Texas Family Code.

 On January 9, 2007, Walker signed a Family Service Plan requiring him to
attend parenting classes, to submit to random drug tests, to receive drug treatment, to
maintain a stable environment, to maintain contact with W.J.W. on a weekly basis,
to maintain suitable housing, to refrain from criminal activity, and to follow the
recommendations of service providers. A DFPS caseworker explained the plan to
Walker and told him that his parental rights to W.J.W. could be terminated if he did
not comply. Walker stated to the worker that he understood the plan and that he
would enroll in a rehabilitation program.

 In April of 2007, DFPS filed a permanency progress report with the court,
stating that Walker had not completed any services suggested by DFPS and had not
made progress toward mitigating his parental termination action. The report also
indicated W.J.W.'s current placement was a safe, stable, and nurturing environment
and recommended that the parental rights of Walker and Lauressa be terminated.
About a month after the April permanency progress report was filed, Walker tested
positive for cocaine and marijuana. At trial, W.J.W.'s caseworker testified that
Walker had not visited W.J.W. since the day he was born.

 During his testimony, Walker stated that he was currently living with his sister
in Houston and that she had agreed to let W.J.W. live at her residence, too, if Walker
was allowed to keep custody. When asked why DFPS had not done a home study on
his sister's house, Walker stated, "she didn't--they--it was like she told me that it
would be best for me just to relinquish my rights." He also testified that he had been
clean for eight months before trial, although he had tested positive for marijuana and
cocaine only two months earlier. When asked whether he knew that his wife had been
using cocaine before W.J.W. was born, Walker gave contradictory answers. 

 At the close of trial, the court signed a judgment terminating Walker's parent-child relationship with W.J.W. and appointing DFPS as W.J.W.'s sole managing
conservator. Sufficiency of the Evidence

 In his first three issues, Walker argues that the evidence is both legally and
factually insufficient to support the trial court's termination of his parental rights
pursuant to Texas Family Code Section 161.001(1)(E), Section 161.001(1)(O), and
Section 161.001(2). See Tex. Fam. Code Ann. § 161.001 (Vernon 2008). 

Standard of Review

 Because parental-rights termination "is complete, final, irrevocable, and divests
for all time that natural right . . . [,] the evidence in support of termination must be
clear and convincing before a court may involuntarily terminate a parent's rights."
Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985) (citing Santosky v. Kramer, 455 U.S.
745, 747-48, 102 S. Ct. 1388, 1391-92 (1982)). Clear and convincing evidence
"means the measure or degree of proof that will produce in the mind of the trier of
fact a firm belief or conviction as to the truth of the allegations sought to be
established." Tex. Fam. Code. Ann. § 101.007 (Vernon 2008). This heightened
burden of proof results in a heightened standard of review. 

 When determining legal sufficiency, we review "all the evidence in the light
most favorable to the finding to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its finding was true." In re J.F.C., 96
S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's
conclusions, we must assume that the factfinder resolved disputed facts in favor of
its finding if a reasonable factfinder could have done so. Id. We disregard all
evidence that a reasonable factfinder could have disbelieved or found to have been
incredible. Id. This does not mean that we must disregard all evidence that does not
support the finding. Id. Disregarding undisputed facts that do not support the finding
could skew the analysis of whether there is clear and convincing evidence. Id. 
Therefore, in conducting a legal-sufficiency review in a parental-rights-termination
case, we must consider all of the evidence, not only that which favors the verdict. City
of Keller v. Wilson, 168 S.W.3d 802, 817 (Tex. 2005). 

 In determining factual sufficiency under the clear-and-convincing burden, we
must consider whether the evidence is sufficient to produce a firm belief or
conviction in the mind of the factfinder as to the truth of the allegation sought to be
established. In re C.H., 89 S.W.3d 17, 25-26 (Tex. 2002). We consider whether
disputed evidence is such that a reasonable factfinder could not have resolved that
disputed evidence in favor of its finding. J.F.C., 96 S.W.3d at 266. "If, in light of the
entire record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not reasonably
have formed a firm belief or conviction, then the evidence is factually insufficient." 
Id.

 The natural rights that exist between parents and their children are of
constitutional dimension. Holick, 685 S.W.2d at 20. Therefore, termination
proceedings should be strictly scrutinized, and the involuntary termination statutes
should be strictly construed in favor of the parent. Id. at 20-21. However, "[j]ust as
it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child
not be sacrificed merely to preserve that right." C.H., 89 S.W.3d at 26. For parental
rights to be involuntarily terminated, it must be found by clear and convincing
evidence that the parent engaged in conduct set out in subsection 161.001(1) and that
termination would be in the child's best interest pursuant to subsection 161.001(2).
Tex. Fam. Code Ann. § 161.001 (Vernon 2008). Both elements must be established,
and termination may not be based solely on the factfinder's determination of best
interest of the child. See Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533
(Tex. 1987); In re L.M., 104 S.W.3d 642, 646 (Tex. App.--Houston [1st Dist.] 2003,
no pet.).

Grounds for Termination

 In terminating Walker's parental relationship with W.J.W., the trial court
expressly found: 


 that Walker engaged in conduct or knowingly placed the child at
issue in this suit with persons who engaged in conduct which
endangers the child's physical or emotional well-being, pursuant
to [Section] 161.001(1)(E); 
 that Walker failed to comply with the provisions of a court order
that specifically established the actions necessary for him to
obtain the return of the child . . . pursuant to Section
161.001(1)(O); and 
 that termination of parental rights of . . . Walker . . . is in the best
interest of the child.


In his first three issues, Walker challenges the legal and factual sufficiency of these
findings. 


A. Endangerment

Legal Sufficiency

 We begin by considering the legal sufficiency of the trial court's section
161.001(1)(E) finding. To terminate a parent-child relationship based on section
161.001(1)(E), the trial court must find by clear and convincing evidence that the
parent "engaged in conduct or knowingly placed the child with persons who engaged
in conduct which endangers the physical or emotional well-being of the child." Tex.
Fam. Code. Ann. § 161.001(1)(E). "To endanger" means to expose a child to loss
or injury or to jeopardize a child's emotional or physical health. Robinson v. Tex.
Dep't of Protective & Regulatory Servs., 89 S.W.3d 679, 686 (Tex. App.--Houston
[1st Dist.] 2002, no pet.) (citing Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d at
533. The term means "more than a threat of metaphysical injury or the possible ill
effects of a less-than-ideal family environment." Boyd, 727 S.W.2d at 533. However,
danger to a child need not be established as an independent proposition and may be
inferred from parental misconduct even if the conduct is not directed at the child and
the child suffers no actual injury. Id. The relevant inquiry is whether evidence exists
that a parental course of conduct endangered the child's physical or emotional well-being. In re R.D., 955 S.W.2d 364, 368 (Tex. App.--San Antonio 1997, pet. denied).
The conduct does not have to occur in the presence of the child. Director of Dallas
Cty. Child Protective Servs. v. Bowling, 833 S.W.2d 730, 733 (Tex. App.--Dallas
1992, no writ). And the conduct may occur before the child's birth and both before
and after the child has been removed by the Department. See In re S.M.L.D., 150
S.W.3d 754, 757-58 (Tex. App.--Amarillo 2004, no pet.); Avery v. State, 963 S.W.2d
550, 553 (Tex. App.--Houston [1st Dist.] 1997, no writ).

 Mere imprisonment will not, standing alone, constitute engaging in conduct
that endangers the physical or emotional well-being of a child. See Boyd, 727 S.W.2d
at 533. However, when all of the evidence, including imprisonment, shows a course
of conduct that has the effect of endangering the physical or emotional well-being of
the child, a finding under section 161.001(1)(E) is supportable. Id. at 533-34. If the
imprisonment of the parent displays a voluntary, deliberate and conscious course of
conduct, it qualifies as conduct that endangers the child. See Avery, 963 S.W.2d at
553.

 The record reflects Walker's incarceration on multiple occasions both before
and after W.J.W.'s birth: driving while intoxicated (30 days); criminal assault against
his wife (90 days); criminal assault against his mother-in-law (20 days); delivery of
marijuana (90 days); and interfering with public duties (5 days). Even though three
of these offenses occurred before W.J.W. was born, they can still be considered as
part of a voluntary, deliberate, and conscious course of conduct that had the effect of
endangering W.J.W. See In re R.W., 129 S.W.3d 732, 738 (Tex. App.--Fort Worth
2004, pet. denied); Harris v. Herbers, 838 S.W.2d 938, 942-43 (Tex. App.--Houston
[1st Dist.] 1992, no writ). Conduct that routinely subjects a child to the probability
that the child will be left alone because a parent is jailed endangers both the physical
and emotional well-being of the child. See In re S.D., 980 S.W.2d 758, 763 (Tex.
App.--San Antonio 1998, pet. denied). 

 Walker was arrested and jailed twice for criminal assault against his wife and
his mother-in-law. Abusive and violent criminal conduct by a parent can produce an
environment that endangers the well-being of a child. In re B.R., 822 S.W.2d 103, 106
(Tex. App.--Tyler 1991, writ denied). Evidence as to how a parent has treated
another child or spouse is relevant regarding whether a course of conduct under
section 161.001(1)(E) has been established. In re D.T., 34 S.W.3d 625, 636-37 (Tex.
App.-Fort Worth 2000, pet. denied). Evidence that a person has engaged in abusive
conduct in the past permits an inference that the person will continue violent behavior
in the future. Schaban-Maurer v. Maurer-Schaban, 238 S.W.3d 815, 824 (Tex.
App.--Fort Worth 2007, no pet.); In re M.G.M., 163 S.W.3d 191, 202 (Tex.
App.--Beaumont 2005, no pet.).

 The trial court heard evidence that Walker had tested positive for cocaine and
marijuana after he had signed a Child Protective Services Family Service Plan and
therefore knew that his parental rights were in jeopardy and that Walker had a prior
history of drug use that included an arrest for delivery of marijuana. Because it
exposes the child to the possibility that the parent may be impaired or imprisoned,
illegal drug use may support termination under section 161.001(1)(E). See Vasquez 
v. Tex. Dep't of Protective & Regulatory Servs., 190 S.W.3d 189, 195-96 (Tex.
App.--Houston [1st Dist.] 2005, pet. denied) (terminating parental rights despite
there being no direct evidence of parent's continued drug use actually injuring child).
Evidence of narcotics use and its effect on a parent's life and ability to parent may
establish that the parent has engaged in an endangering course of conduct. See
Toliver v. Tex. Dep't of Family & Protective Servs., 217 S.W.3d 85, 98 (Tex.
App.-Houston [1st Dist.] 2006, no pet.) (citing In re R.W., 129 S.W.3d at 739).

 The evidence presented with respect to Walker's pattern of crime,
imprisonment, drug use, and violence against family members demonstrates a
deliberate course of conduct from which a reasonable trier of fact could have found
that Walker endangered W.J.W.'s emotional and physical well-being. When viewed
in the light most favorable to the judgment, we hold that the evidence was legally
sufficient to support the trial court's finding that Walker engaged in a deliberate
course of conduct that endangered W.J.W. under section 161.001(1)(E). 

Factual Sufficiency

 In conducting our factual-sufficiency review, we must ascertain what disputed
evidence, if any, exists as to the conduct in question. In re J.W., 152 S.W.3d 200, 206
(Tex. App.--Dallas 2004, pet. denied). Neither Walker's history of imprisonment nor
his history of assault against family members is disputed. The only facts that Walker
disputes relate to his illegal drug use. During trial, Walker testified that he had been
clean for the previous eight months, even though he had tested positive for cocaine
and marijuana only a few months earlier. A rational trier of fact could have chosen
to believe the positive drug test results over Walker's testimony, viewed the evidence
as a whole, and reasonably formed a firm belief or conviction that Walker had
engaged in conduct that endangered the physical or emotional well-being of W.J.W.
Thus, the evidence is factually sufficient to support the trial court's finding on the
section 161.001(1)(E) ground. We overrule Walker's first issue. 

B. Failure to Comply with Court Order

 Because we conclude that the evidence is both legally and factually sufficient
to support the trial court's finding under section 161.001(1)(E), and because a finding
as to any one of the acts or omissions enumerated in section 161.001(1) is sufficient
to support termination, we need not address Walker's second issue challenging the
trial court's findings under section 161.001(1)(O). However, we must still determine
whether the evidence was sufficient to support the trial court's finding that
termination was in W.J.W.'s best interest, pursuant to section 161.001(2). C. Best Interest of the Child

 In his third issue, Walker challenges the legal and factual sufficiency of the
trial court's finding, pursuant to Section 161.002(2), that termination was in W.J.W.'s
best interest. See Tex. Fam. Code. Ann. § 161.001(2) (Vernon Supp. 2008).

 A strong presumption exists that a child's best interests are served by
maintaining the parent-child relationship. In re L.M., 104 S.W.3d 642, 647 (Tex.
App.--Houston [1st Dist.] 2003, no pet.). The same evidence of acts or omissions
used to establish grounds for termination under section 161.001(1) may be probative
in determining the best interests of the child. In re C.H., 89 S.W.3d 17, 28 (Tex.
2002); L.M., 104 S.W.3d at 647. In Holley v. Adams, the Texas Supreme Court
provided a nonexclusive list of factors that the trier of fact in a termination case may
use in determining the best interest of the child. 544 S.W.2d 367, 371-72 (Tex. 1976).
These factors include (1) the desires of the child; (2) the emotional and physical needs
of the child now and in the future; (3) the emotional and physical danger to the child
now and in the future; (4) the parental abilities of the individuals seeking custody; (5)
the programs available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency seeking
custody; (7) the stability of the home or proposed placement; (8) the acts or omissions
of the parent that may indicate that the existing parent-child relationship is not a
proper one; and (9) any excuse for the acts or omissions of the parent. Id. These
factors are not exhaustive, and there is no requirement that DFPS prove all factors as
a condition precedent to parental termination. In re C.H., 89 S.W.3d at 27; Adams v.
Tex. Dep't of Family & Protective Servs., 236 S.W.3d 271, 280 (Tex. App.--Houston
[1st Dist.] 2007, no pet.). Termination of the parent-child relationship is not justified
when the evidence shows merely that a parent's failure to provide a more desirable
degree of care and support of the child is due solely to misfortune or the lack of
intelligence or training, and not to indifference or malice. Clark v. Dearen, 715
S.W.2d 364, 367 (Tex. App.--Houston [1st Dist.] 1986, no writ). 

The desires of the child 

 At trial, W.J.W. was only one year old and, thus, too young to express his
desires. However, there is no reason to believe that W.J.W. has any conscious
knowledge of Walker, as he has not seen W.J.W. since the day that he was born. 

The child's physical and emotional needs, now and in the future

 The goal of establishing a stable, permanent home for a child is a compelling
state interest. In re C.E.K., 214 S.W.3d 492, 498 (Tex. App.--Dallas 2006, no pet.).
Walker has not seen W.J.W. since the day that the child was born. Walker testified
that he has not been employed since May 2005 (more than a year before W.J.W. was
born). Walker also has not had stable housing at any point during W.J.W.'s life, and
he has failed to comply with any part of the Family Service Plan implemented by
DFPS. At the time of W.J.W.'s birth, both Walker and Lauressa were homeless,
intoxicated, and had no identification, money, or paperwork with them--indications
that they were not prepared to act as parents to an infant. Walker's inability to provide
a stable home, to remain gainfully employed, or to comply with his court-ordered
service plan, taken together with Walker's drug use and criminal activity since
W.J.W. was born, supports the trial court's finding that Walker has not been and
would not be able to provide for W.J.W.'s emotional or physical needs in any type of
permanent way.

The emotional and physical danger to the child, now and in the future

 The evidence regarding endangerment, discussed in support of the trial court's
finding under section 161.001(1)(E) above, is also probative of a finding as to danger
in determining the child's best interest. See C.H., 89 S.W.3d at 28. 

The parental abilities of those seeking custody

 In July 2004, Walker was arrested in Florida for child neglect because he left
his oldest three children in a car while he was out looking for their mother. These
charges were dropped and the Florida CPS report was closed because the Department
was unable to locate the family. A year later, Walker's three children were taken into
custody by Florida's CPS Department after it received a report from Lauressa's
relatives that the family was living in a car, traveling from state to state, and the
parents were using drugs with children in the back seat. It was reported that neither
parent worked and that the children had not been seen in school for over a year. The
three children were then placed in the care of Lauressa's mother, Lisa Hale, in
Florida. Walker showed no interest in caring for W.J.W. and had not seen him since
the day the child was born. This, when considered with Walker's two criminal assault
charges against his family members and his criminal and drug history, is sufficient to
show Walker's lack of parental abilities.

Programs available to assist parents in promoting the child's best interests

 There was no evidence presented at trial that Walker has participated in any of
the programs outlined in the Family Service Plan. Walker told his DFPS caseworker
that he was enrolled in a rehabilitation program, but when the caseworker called the
number, it turned out to be a shelter and not a rehabilitation center. 

Plans for the child by the individual or agency seeking custody

 Although Walker testified that his sister was willing to allow W.J.W. to live in
her house, he admitted upon further questioning that his sister also told him that it
would be best if he would just relinquish his rights. DFPS planned for W.J.W. to be
adopted. W.J.W.'s current caregiver had expressed an interest in adopting him and
testified that she loved him and wished to provide a safe and loving environment for
him. 

The stability of the home or proposed placement

 The DFPS caseworker testified that W.J.W. was thriving in his current
placement and was bonded to his current caregivers. She said that the placement
home seems safe and appropriate and that all of W.J.W.'s needs were being met and
would be met in the future. 

Parent's acts or omissions that indicate the current parent-child relationship is
improper and parent's excuses for those acts or omissions


 Currently, Walker and W.J.W. have no parent-child relationship. Walker has
not seen his son at any scheduled visitations arranged by DFPS. Walker apparently
did show up for one visit, but a miscommunication with the caseworker about the date
prevented him from seeing the child. The factfinder could reasonably have concluded
that this one failed attempt did not excuse Walker's failure to visit his son over an
entire year.

 In light of all of the evidence, the trial court could have reasonably formed a
firm belief or conviction that termination of Walker's parental rights was in W.J.W.'s
best interest. Accordingly, we hold that the evidence is both legally and factually
sufficient to support the trial court's finding that termination of Walker's parental
rights was in the best interest of W.J.W. 

 We overrule Walker's third issue. Having done so, we need not address his
fourth issue, which requests that we reverse the appointment of DFPS as sole
managing conservator should we conclude that the trial court erred in terminating his
parental rights.

Ineffective Assistance of Counsel

 We discuss Walker's fifth and sixth issues together. In his fifth issue, Walker
contends that Sections 263.405(b) and (i) of the Texas Family Code violate the
separation of powers provision of the Texas Constitution and deny him due process
of law because their operation prevented him from preserving a challenge of
ineffective assistance of counsel. (1) In his sixth issue, Walker asserts that he received
ineffective assistance of counsel at trial.

 We may examine the unpreserved sixth issue in order to determine the validity
of Walker's due process challenge. The Texas Supreme Court presumes that the rules
governing preservation of error in civil cases, including parental-rights-termination
cases, comport with due process of law. See In re B.L.D., 113 S.W.3d 340, 352-54
(Tex. 2003), cert. denied, 124 S. Ct. 1674 (2004). However, the Texas Supreme Court
has also acknowledged that, in a given parental-rights-termination case, a particular
"calibration" of the procedural due process factors outlined by the United States
Supreme Court in Mathews v. Eldridge (2) could require a court of appeals to review an
unpreserved complaint of error as part of a fact-specific analysis to ensure that a
particular litigant was not denied due process. Id. at 354 (citing Lassiter v. Dep't of
Soc. Services, 452 U.S. 18, 32-34, 101 S. Ct. 2153, 2162-63 (1981)). In a case
decided on the same day as B.L.D., the Texas Supreme Court held that "our
procedural rule governing factual sufficiency preservation must give way to
constitutional due process considerations" when a parent's counsel in a parental-rights-termination case unjustifiably fails to preserve a factual-sufficiency complaint.
In re M.S., 115 S.W.3d 534, 546-50 (Tex. 2003). Additionally, the Beaumont Court
of Appeals has examined unpreserved jury charge error in order to determine whether
the parent in a parental-rights-termination case was denied effective assistance of
counsel. In re S.A.S., 200 S.W.3d 823, 828-30 (Tex. App.--Beaumont 2006, pet.
denied). In determining whether we must review Walker's unpreserved complaint, we
weigh the Eldridge factors and balance the net result against the presumption that
Sections 263.405(b) and (i) of the Texas Family Code comport with constitutional
due process requirements. M.S., 115 S.W.3d at 547. 

 Applying the principles set out in the cases discussed and cited above, we
determine that we must examine Walker's unpreserved complaint. Although the State
certainly has an interest in ensuring that parental-rights-termination proceedings are
expeditious, final, and governed by consistently applied procedural rules, the costs
to both the parent and the child of an inaccurate, unjust decision outweigh the
benefits of preserving judicial efficiency. Further, as noted by the Texas Supreme
Court in M.S. and the United States Supreme Court in Santosky v. Kramer, the State
has an interest in protecting the welfare of the child, and that interest must initially
manifest itself by working toward preserving the familial bond rather than severing
it. M.S., 115 S.W.3d at 548; Santosky, 455 U.S. 745, 766-67, 102 S. Ct. 1388,
1401-02 (1982). "'[T]he State registers no gain towards its declared goals when it
separates children from the custody of fit parents.'" Santosky, 455 U.S. at 767, 102
S. Ct. at 1402 (quoting Stanley v. Illinois, 405 U.S. 645, 652, 92 S. Ct. 1208, 1213
(1972)). Thus, the State's interest in meeting its ultimate goal of ensuring the safety
and stability of the child is best served by procedures that promote an accurate
determination of whether the natural parents can and will provide a normal home. See
M.S., 115 S.W.3d at 549; Santosky, 455 U.S. at 767, 102 S. Ct. at 1402. To that end,
it is important to protect the Constitutional right to effective counsel of a parent
facing the loss of his or her children. 

 In this case, Walker, who is indigent, was represented by a court-appointed
lawyer at trial and is being represented by a different court-appointed lawyer on
appeal. Given this situation, we note that, even under the most favorable of
circumstances, it would be extremely difficult for the appellate lawyer to procure a
trial transcript and clerk's record, familiarize himself with the case, evaluate the
performance of trial counsel, and file a statement of appellate points with the court
within the fifteen-day window provided by the statute. Failure to meet this swift
deadline would bar the appellate court from considering what may be a valid
challenge of ineffective assistance of counsel. We conclude that, in this case, the
procedural rule must give way out of concern for due process of law. See B.L.D., 113
S.W.3d at 352-54; M.S., 115 S.W.3d at 546-50; S.A.S., 200 S.W.3d at 828-30. 
Accordingly, we now examine the merits of Walker's challenge of ineffective
assistance of counsel. 

Standard of Review: Ineffective Assistance

 To successfully assert a challenge of ineffective assistance of counsel, a
defendant in a parental-rights-termination case must show that his or her counsel's
performance was deficient and that this deficiency prejudiced the defense. In re
J.P.B., 180 S.W.3d 570, 574 (Tex. 2005) (citing In re M.S., 115 S.W.3d at 545)
(citing Strickland v. Washington, 466 U.S. 668, 687-92, 104 S. Ct. 2052, 2063-67
(1984))). This standard requires a showing that counsel's errors were serious enough
to deprive the defendant of a fair trial whose result is reliable. Strickland, 466 U.S.
at 687, 104 S. Ct. at 2064. There is a strong presumption that counsel's conduct falls
within the wide range of reasonably professional assistance, including the possibility
that counsel's decision was based on strategy. M.S., 115 S.W.3d at 549 (citing
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065).

 In deciding whether counsel's performance in a particular case is deficient, we
must take into account all of the circumstances surrounding the case and focus
primarily on whether counsel performed in a "reasonably effective" manner. M.S.,
115 S.W.3d at 545 (citing Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064-65). It
is only when the conduct was "so outrageous that no competent attorney would have
engaged in it" that the challenged conduct will constitute ineffective assistance. M.S.,
115 S.W.3d at 545 (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001)). 

 If a reviewing court concludes that the conduct of Walker's counsel was
deficient, the court must then determine if that conduct was prejudicial to him by
assessing whether "'there is a reasonable probability that, but for counsel's
unprofessional error(s), the result of the proceeding would have been different.'"
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also M.S., 115 S.W.3d at 550;
Garcia, 57 S.W.3d at 440. Strickland's appellate record requirement applies to
ineffective assistance challenges in termination cases: "'An allegation of ineffective
assistance must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.'" In re K.K., 180 S.W.3d 681, 685 (Tex.
App.--Waco 2005, no pet.); see also Thompson v. State, 9 S.W.3d 808, 813-14 (Tex.
Crim. App. 1999). Failure to make the required showing of either deficient
performance or sufficient prejudice defeats an ineffectiveness challenge. See
Thompson, 9 S.W.3d at 813.

 Walker presented his ineffective-assistance challenge to the trial court in a
supplemental motion for new trial, and the trial court overruled Walker's complaint
by denying his supplemental motion for new trial. We therefore analyze Walker's
ineffective-assistance-of-counsel issue as a challenge to the denial of his
supplemental motion for new trial. Biagas v. State, 177 S.W.3d 161, 170 (Tex.
App.--Houston [1st Dist.] 2005, pet. ref'd) (citing Charles v. State, 146 S.W.3d 204,
208 (Tex. Crim. App. 2004), superseded in part on other grounds by Tex. R. App. P.
21.8(b)). In such circumstances, we review the Strickland test through an abuse of
discretion standard. Id. Thus, we reverse only if the trial court's decision is arbitrary
or unreasonable, viewing the evidence in the light most favorable to the ruling. Id; see
also Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) ("[A] trial court
abuses its discretion in denying a motion for new trial only when no reasonable view
of the record could support the trial court's ruling."). In reviewing a trial court's
ruling on a motion for new trial, we give almost total deference to the trial court's
determination of historical facts that are supported by the record, especially when the
trial court's findings are based on an evaluation of credibility and demeanor. Charles,
146 S.W.3d at 206; Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We
may also rely upon implied findings of fact that are supported by the record to uphold
the trial court's ruling even when the trial court is not faced with expressly conflicting
affidavits or testimony. Charles, 146 S.W.3d at 206.

Analysis

 First, Walker argues that his counsel was ineffective because his court-appointed lawyer was not present at the termination trial but had sent his brother, who
practices law with him, in his place. The record reflects this substitution but no
explanation for the switch. We may not speculate to find trial counsel ineffective
when the record is silent regarding counsel's reasons for his actions. See Gamble v.
State, 916 S.W.2d 92, 93 (Tex. App.--Houston [1st Dist.] 1996, no pet.) (citing
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). Furthermore, Walker
has failed to affirmatively show that this substitution constituted a deficiency or that
the outcome of the case would have been different had his appointed counsel actually
appeared at trial.

 Next, Walker argues that his attorney failed to make hearsay objections at trial
and to properly cross-examine the witnesses. However, Walker's appellate counsel
did not question his trial counsel regarding these omissions during the motion for new
trial hearing. Due to the lack of evidence in the record regarding trial counsel's
reasons for cross-examining the witnesses as he did and for not objecting to certain
testimony and evidence, we cannot conclude that trial counsel's performance was
deficient. Walker has not rebutted the presumption that trial counsel made his
decisions in the exercise of reasonable professional judgment. 

 Finally, Walker argues that he received ineffective assistance of counsel
because, he alleges, neither of his two attorneys conducted a pretrial investigation.
Walker attached an affidavit to his supplemental motion for new trial asserting that
the attorneys did not return several phone messages left by Walker, interview any
witnesses, inform Walker of his rights and obligations, or familiarize themselves with
his case before trial. The affidavit also stated that such investigation would have
"brought out information and testimony that would have directly contradicted and
refuted the evidence against [Walker]." Walker reiterated many of these statements
on the stand at the motion for new trial hearing and argues that, at the hearing on his
motion for new trial, his affidavit and testimony were largely uncontroverted by the
attorneys who represented him. (3) 

 After reviewing the entire record in this case, we conclude that it was not
unreasonable for the trial court to discredit Walker's testimony regarding the
investigative efforts and conduct of his attorneys and to find that he received effective
counsel. A trial court sitting as the trier of fact is not required to accept as true the
statements made in an affidavit, even if that affidavit is uncontradicted. See Biagas,

177 S.W.3d at 171; Charles, 146 S.W.3d at 213 (holding that, although affidavits
averring that trial counsel had not conducted any independent investigation into
voluntariness of defendant's confession were uncontroverted, trial court did not abuse
discretion in denying motion for new trial on grounds of ineffective assistance of
counsel). The same is true of live testimony. See State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000) (citing Mattias v. State, 731 S.W.2d 936, 940 (Tex. Crim.
App. 1987)); see also Nelson v. Najm, 127 S.W.3d 170, 174 (Tex. App.--Houston
[1st Dist.] 2003, pet. denied) (applying identical rule in civil bench proceeding--trial
court may "take into consideration all the facts and surrounding circumstances in
connection with the testimony of each witness and accept or reject all or any part of
that testimony"). Further, the uncontradicted testimony of an interested witness
cannot be considered as doing more than raising an issue of fact to be decided by the
trial court if there are circumstances in evidence tending to discredit or impeach the
interested witness's testimony. See Anchor Cas. Co. v. Bowers, 393 S.W.2d 168, 169
(Tex. 1965). 

 The record in this case discredits and impeaches the veracity of Walker's
testimony. The trial court was well aware at the time of Walker's testimony of his
history of drug use, crime, and imprisonment and the fact that Walker had never even
visited W.J.W. The record also reflects that, on at least one occasion during the
termination trial, Walker's testimony under oath was in direct contradiction of the
facts established by the court records admitted into evidence. While under oath at his
termination trial, Walker testified that he had last used illegal drugs "maybe like eight
months" before the trial. However, in the same proceeding, the trial court received
evidence that Walker had in fact failed a court-ordered drug test just over two months
before the trial. (4) Similarly, Walker did not admit to assaulting W.J.W's mother in
2000, although opposing counsel pointed out to him that she had a copy of a
judgment establishing that he had pleaded guilty to this offense. (5)

 In addition, the transcript of Walker's direct examination by his counsel
discredits Walker's claims that his counsel conducted no pretrial investigation of this
matter. Although relatively brief, the examination is precise and focused on eliciting
a series of facts that could be helpful to Walker's claims. With the exception of
Walker's testimony regarding his contacts with CPS and past drug use, the elicited
facts were largely uncontradicted on cross-examination by DFPS. Counsel asked
Walker about the alleged failure of CPS to communicate with him during the process;
the fact that he was currently living with his sister, who was employed, would help
take care of W.J.W., and was willing to undergo a homestudy for her suitability to be
involved in W.J.W.'s life; Walker's employment skills and job prospects; and
Walker's alleged involvement in the lives of his other four children. These facts
were elicited from Walker despite the fact that Walker was not even present at the
beginning of the termination trial and did not appear until the end of the trial, right
before his testimony. The record reflects that, after Walker arrived in court, there was
only a short recess before he was placed on the stand to testify. Under these
circumstances, we conclude that these questions illustrate counsel's familiarity with
the material facts of the case and discredit Walker's allegations that his counsel did
not conduct any pretrial investigation in this matter. (6) 

 Even if, as the dissent urges, we give no deference to the trial court's
determination of historical facts, Walker's challenge of ineffective assistance of
counsel still fails. The record simply does not affirmatively show a reasonable
probability that, but for the conduct of Walker's counsel, "the result of the proceeding
would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068;
Thompson, 9 S.W.3d at 812. When asked, at the hearing on his motion for new trial,
what evidence proffered by DFPS he could have refuted had his counsel conducted
an adequate pretrial investigation, Walker was not able to identify any evidence that
had not been produced at the termination trial that would have changed its outcome.

 Accordingly, we hold that the trial court did not abuse its discretion in rejecting
Walker's testimony and affidavit regarding his counsel's conduct and denying
Walker's supplemental motion for new trial on the ground of ineffective assistance
of counsel. We overrule Walker's sixth issue.Due Process

 Having examined the record and found Walker's ineffective assistance of
counsel challenge to be without merit, we do not reach his fifth issue because Walker
cannot show that the operation of the challenged statute caused him harm. See
CenterPoint Energy Houston Elec., LLC v. Gulf Coast Coalition of Cities, 252
S.W.3d 1, 31 (Tex. App.--Austin 2008, no pet.) ("[I]n making a due-process claim,
a party must show that a due-process violation occurred and that he or she was
harmed by that violation.") (citing Hammack v. Public Util. Comm'n, 131 S.W.3d
713, 730 (Tex. App.--Austin, pet. denied)) (citing Vandygriff v. First Sav. & Loan,
Etc., 617 S.W.2d 669, 673 (Tex. 1981)). Additionally, our disposition of Walker's
sixth issue effectively disposed of the case. Texas courts will not pass on the
constitutionality of a statute when the case may be decided on independent,
alternative grounds. Baptist Hosp. of Southeast Tex., Inc. v. Baber, 714 S.W.2d 310,
310 (Tex. 1986); San Antonio General Drivers, Helpers Local No. 657 v. Thornton,
156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957) (orig. proceeding).

Conclusion

 We affirm the trial court's judgment.

 

 

 George C. Hanks, Jr.

 Justice


 Panel consists of Justices Jennings, Hanks, and Bland.

 

 Justice Jennings, dissenting.









 
1. The challenged sections require a party appealing the termination of parental rights to file
a statement of appellate points with the trial court. Issues omitted from the statement are not
preserved for appeal. The statement of appellate points must be filed with the trial court no later than
the 15th day after the signing of an order terminating parental rights.
2. In Eldridge, the United States Supreme Court held that identifying the requirements of
procedural due process generally requires consideration of: (1) the private interest affected by the
proceeding or official action; (2) the risk of an erroneous deprivation of that interest through the
procedures used; and (3) the government's interest, including the function involved and the fiscal
and administrative burdens that the additional or substitute procedural requirement would entail. See
424 U.S.319, 335, 96 S. Ct. 893, 903 (1976).
3. We note that, at the hearing, Walker's trial attorney neither controverted nor admitted as
true the statements in Walker's affidavit. After testifying as the first witness in the hearing on the
motion for new trial, Walker's counsel testified as follows:

 Q: All right. I understand. Is there any other evidence that you would like to offer to the Court in
terms of or in contradiction to the affidavit that Mr. Walker has?

A: No.

There was no cross-examination of this testimony.
4. The results of the drug test establish that Walker was under the influence of drugs on the
day of his last court appearance before his trial. Walker was represented by counsel at this hearing.
5. Walker later testified in the hearing on the motion for new trial that "just because you get
convicted of assault doesn't mean that you assaulted anybody." The record also reflects that when
asked questions that could be harmful to his case, for example regarding his awareness that his wife
was using cocaine and his current employment status, Walker was evasive in his responses.
6. Although the dissent is critical of the brevity of Walker's direct examination, given Walker's
history of drug abuse, including the fact that he had been under the influence of drugs at his last court
appearance, and his late arrival at the termination trial, we cannot conclude that Walker's counsel's
decision to limit Walker's time on the stand was not a valid strategic decision.