James William CLARK, Appellant,

v.

Jack Otto DEAREN and Karen Ruth Dearen, Appellees.

No. 01–85–0060–CV.

Court of Appeals of Texas, Houston (1 Dist.).

May 15, 1986.

Rehearing Denied Aug. 14, 1986.

J. Douglas Wilson, Gulf Coast Legal Foundation, Garcelle Jones, Gulf Coast Legal Foundation, Houston, for appellant.

Richard D. Heyen, Baytown, for appellees.

Gerald P. DeNisco, Houston, ad litem.

Diane McManus, Houston, for intervenor.

Before DUGGAN, LEVY and DUNN, JJ.

## OPINION

DUNN, Justice.

Appeal is taken from the trial court's order terminating the parent-child relationship between appellant and J.___ M.___ C.___, his natural child. The same decree that terminated the parental rights of ap-

pellant and the child's natural mother also granted appellees' petition for adoption. Only the child's father appeals the termination order.

Appellees filed their original petition for termination and adoption on or about March 26, 1981. At the time of filing, the physical possession of the 22–month-old child was with the appellees. The parties agree that, following a show-cause hearing on April 15, 1981, appellees were appointed temporary managing conservators of the child, and appellant and the child's natural mother were appointed temporary possessory conservators.

In October of 1982, the natural mother of the child executed an affidavit of relinquishment of parental rights; this affidavit was later revoked on June 15, 1984, during the trial of this cause.

The statement of facts indicates that appellant and the child's natural mother were divorced on April 13, 1983, and that the divorce decree appointed the child's paternal grandmother managing conservator of both children of the marriage. J.M.C.'s older sister has lived with her paternal grandmother since she was 1 year old. The paternal grandmother intervened in the present action on February 24, 1984, requesting the court to deny any relief sought by appellees.

In his first and second points of error, appellant challenges the sufficiency of the evidence, and further contends that the trial court erred in terminating the parent-child relationship in the absence of any evidence that was clear and convincing. We agree with appellant.

■■■ The clear and convincing evidence standard of proof will be required in all proceedings for involuntary termination of the parent-child relationship. *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980). Although the evidence need not be unequivocal or undisputed, the clear and convincing evidence standard requires that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to

be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex.), *vacated and remanded on other grounds*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); Tex. Fam.Code Ann. sec. 11.15(b), (c) (Vernon Supp.1986).

Involuntary termination of parental rights rests upon Texas Family Code sec. 15.02. Subdivision (1) of that section lists several acts or omissions, one or more of which must be proved in a termination case. In the present case, appellees relied upon 15.02(1)(D) and (E), and the trial court specifically found that appellant:

1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; and

2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

Subdivision (2) of the same Family Code section requires proof that the termination is in the best interest of the child. *"Both elements must be established* and the requirements of Subdivision (1) are not excused because a court may be of the opinion that Subdivision (2) has been proved." *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex.1976) (emphasis added).

In contrast, suits for conservatorship, possession, and support, governed by chapter 14 of the Family Code, are determined primarily by the "best interest" test. *See* Tex.Fam.Code Ann. sec. 14.07 (Vernon 1975 & Supp.1986). Those proceedings, in which the parent still retains some rights and interests in the child, have different purposes from termination cases. A decree of termination of parental rights "divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other.... The difference in the proceedings justifies the caution with which courts have characteristically considered termination cases." *Wiley*, 543 S.W.2d at 352.

Strict scrutiny of the evidence in the present case leads inescapably to the conclusion that the trial court erred in terminating the parental rights of appellant. There is no evidence to suggest that the appellant knowingly placed or allowed his son to remain in conditions or surroundings that endangered the child's physical or emotional well-being, or that appellant engaged in conduct or knowingly placed his son with persons who engaged in conduct that endangered the child's emotional or physical well-being. The natural right that exists between parents and their children is one of constitutional dimensions, *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and appellees failed to produce sufficient evidence to justify the termination of this right.

At the outset, it is well worth noting that appellees took the child from the possession of his maternal grandmother on or about March 21, 1981, when the child was 22 months of age. Appellees had known the child, his natural mother, and their living conditions for approximately 4 months when appellees took the child, but there is no evidence that the Harris County Child Welfare Unit or any appropriate agency was involved. The facts reveal that appellees' cousin was the manager of the apartment facility where the child was living with his natural mother and maternal grandmother, and that the apartment manager telephoned appellees to come get the child. The apartment manager stated that this action was requested by the child's mother. At the time of this taking, the natural mother was not present, and her testimony is contradictory on the issue of her consent. There is no evidence to suggest that appellant had any knowledge of appellees' interest in his child. The maternal grandmother did not testify in this cause. The adoptive father testified that he called an attorney immediately after taking possession of the child because he was concerned about the possibility of kidnapping charges. Appellees' petition for termination and adoption was filed one week later, and they were appointed temporary managing conservators of the child on April 15, 1981.

This chronology demonstrates that the relevant time period in this action is between May 31, 1979, the child's date of birth, and April 15, 1981. The evidence indicates that during this time, the child was living with his natural mother, and either his natural father, maternal grandmother, or paternal grandmother. At the time of the child's birth, his parents were separated. Appellant saw his son for the first time when the boy was 2 weeks old. The natural mother testified that she and appellant were "together mostly" from the time the child was 6 months old until he was 18 months old, although appellant recalls this period as lasting about 6 or 7 months.

The marital history of appellant and the child's natural mother is characterized by separations and reunions. When the parents were not living together, the child and his natural mother lived with his maternal grandmother, and on occasion, with his paternal grandmother. Therefore, to support the trial court's termination of appellant's parental rights, the evidence must show that: 1) these surroundings endangered the emotional and physical well-being of the child and that appellant knowingly allowed the child to remain there; or, 2) appellant engaged in conduct that endangered the child physically or emotionally; or, 3) the child's mother, paternal grandmother, and maternal grandmother were persons who engaged in conduct that emotionally or physically endangered the child, and appellant knowingly placed his child with them. We can find no support for these propositions in the record.

The evidence suggests that the child's maternal grandmother is an alcoholic, and that her apartment was very dirty. The social worker assigned to the case (following the filing of appellees' petition for termination and adoption) described the scenario as "hard-core poverty" and expressed an opinion that the interests of the child would be better served by remaining with the appellees. However, this opinion was

limited to a comparison between appellees' home and the maternal grandmother's apartment. The social study of appellant's home in Liberty County was not done until April of 1984, and the paternal grandmother's home was later described as "comfortable" by the same social worker who observed the maternal grandmother's apartment.

Appellant testified that his son was well cared for when he and the child's natural mother were together, and that he had no reason to think that the situation was different when his wife left him and returned with her son to her mother's apartment in Houston. He further stated that he had seen the maternal grandmother's apartment on occasions when it was dirty, and on occasions when it was clean. Appellant believed it was acceptable for his son to live in his maternal grandmother's apartment, because "she had been a grandmother before," and because it "looked to him like they were taking pretty good care of him."

No evidence was presented to show that appellant ever left his wife and child, or that he engaged in conduct to drive them away. Instead, the record indicates that the child's mother left her husband on each occasion, often while he was not at home.

The facts show appellant to be illiterate and totally disabled. He suffered a back injury while doing construction work, and also has been burned over 60% of his body. He is dependent on social security and food stamps, and lives in a trailer home supplied by his mother on the Trinity River in Liberty County. His illiteracy prevents him from obtaining a driver's license. Although these facts indicate that appellant might lack some of the attributes of the ideal parent, this Court finds that the harsh and irrevocable remedy of termination of the parent-child relationship is not justified where the evidence shows merely that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *See D.F. v. State*, 525 S.W.2d 933 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.).

There was no expert testimony showing either physical or emotional harm to the child. The adoptive mother merely testified that she had taken the child to a doctor when he was approximately 17 or 18 months old, and the doctor noted that the child was dirty and had an ear infection, but showed no signs of malnutrition. The adoptive mother also stated that the little boy "ate like a starved animal" and had trouble sleeping for the first few nights after he was taken into appellees' possession.

■ It is clear from the record that the evidence of the physical and emotional ill-health of the child was not sufficiently developed to satisfy the requirements of clear and convincing proof. Whenever a cause relies heavily on the proof of medical facts, as when it is alleged that the child's physical or emotional well-being has been endangered, then the party on whom rests the burden of proof must come forward with evidence other than hearsay or the unsubstantiated opinion of witnesses not qualified as medical experts. *See Hall v. Harris County Child Welfare Unit*, 533 S.W.2d 121, 123 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ).

There is also no evidence that appellant's conduct endangered the child physically or emotionally. The child's natural mother testified that during the time she and her son resided with appellant she saw appellant slap the child once, leaving no bruise, that she saw appellant smoke marijuana, "but never in front of the children," and that appellant never did anything that would make her afraid to leave her baby with him. Appellant's mother testified that he is a good and loving father to both his children.

The evaluation portion of the social study conducted on appellant by child placement specialists of Liberty/Chambers Counties Children's Protective Services reads as follows:

This worker found Mr. Clark to be a friendly man. He appears to be concerned about his child, J.M.C., and having custody of the child. Mr. Clark feels that the child needs to be back with his natural family. This worker's assessment is that Mr. Clark could provide minimal care for J.M.C. Therefore, this worker recommends a psychological evaluation of Mr. Clark's ability to see if he can care for a child adequately.

The record also reveals that appellant visited his son on several occasions at the home of appellees. These visits continued until appellees moved; the telephone number of their new residence was unlisted, and the child's natural mother testified that she had refused to give appellant the number. Apparently, the child's natural mother did not see the child after executing her affidavit of relinquishment of parental rights in October of 1982. It is notable that she was driven to the attorney's office to sign this document by one of the appellees, who testified elsewhere that the natural mother was a person "easily influenced by others."

■ The evidence, when considered in its entirety, fails to justify the harsh and irrevocable remedy of termination. Termination involves fundamental constitutional rights that require that statutes authorizing involuntary termination be *strictly construed* in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18 (Tex.1985). The child in question will be 7 years old this year; he has lived with the appellees since he was 22 months of age, and he has apparently not seen his father since 1984. Actions that break the ties between a parent and child, whether done by courts or by parties in interest, can never be justified without the most solid and substantial reasons. We conclude that there is no clear and convincing evidence in the present case to support the trial court's judgment.

We note that the trial court issued a final decree of divorce dated April 13, 1983, in which the managing conservatorship of both children of appellant's marriage was given to their paternal grandmother.

There is nothing in the record before us to suggest that the decree has been modified. Thus, it appears that parties in interest who may be concerned with the managing and/or possessory conservatorship of this child may take appropriate action under sec. 14.08 of the Texas Family Code.

Appellant's first and second points of error are sustained.

Appellant's final point of error alleges that the trial court abused its discretion in awarding judgment for attorney ad litem fees against appellant when the evidence clearly showed appellant to be indigent.

■ The evidence is clear that appellant is disabled and that he receives his income through governmental welfare programs. "The fact that any individual is dependent upon the charity of the public afforded through the various welfare programs is, by itself, prima facie evidence that the person is financially unable to pay the court costs...." *Goffney v. Lowry*, 554 S.W.2d 157, 159–60 (Tex.1977); *see* Tex.Fam.Code Ann. sec. 11.10(e) (Vernon Supp.1986).

No probative evidence was offered to rebut appellant's prima facie showing of indigency. The record is likewise devoid of evidence that appellant has property to sell, mortgage, or pawn, or that appellant could borrow the more than $3,000 required to satisfy the judgment.

Appellant's final point of error is sustained.

The judgment of the court below is reversed, as it applies to appellant. Judgment is rendered that the termination of the parent-child relationship between the appellant and his child is denied, and the award of attorney's fees against the appellant is set aside.