**Opinion issued December 4, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00460-CV

———————————

## IN THE INTEREST OF L.M.S. A/K/A L.S.

---

### On Appeal from the 315th District Court
### Harris County, Texas
### Trial Court Case No. 2013-02617J

---

## MEMORANDUM OPINION

This is an accelerated appeal from the trial court's judgment terminating the

parental rights of appellant mother, K.A.F., to her son, L.M.S.  We affirm.

## BACKGROUND

Seven-month-old L.M.S. was removed from his mother's care in April 2014

after doctors were not satisfied with her explanations about how L.M.S. incurred

certain injuries. Mother had taken L.M.S. to a CVS care clinic on the evening of April 24, 2013 to have two swollen middle fingers on his left hand examined. The CVS clinic referred them to an after-hours pediatric urgent care clinic. The doctor at the pediatric clinic saw several indicators of non-accidental trauma, including a fractured finger on the left hand, swollen fingers on the right hand, and multiple bruises on the right leg. That doctor called Child Protective Services and sent them to a branch of Texas Children's Hospital. Later that night, L.M.S. was moved to the main campus of Texas Children's Hospital. X-rays at Texas Children's additionally revealed that L.M.S.'s leg had a healed fracture.

Of primary concern to each of the physicians that examined L.M.S. was that mother was unable to account for some of the injuries, and that the explanations that she did offer—i.e., that L.M.S. sometimes fell on heavy toys, L.M.S. once rolled out of bed onto the carpeted floor, and that his mother sometime tickled him—were not consistent with his injuries. Mother also gave inconsistent answers about who cared for L.M.S. and with whom she lived.

On April 26, 2013, the Department of Family and Protective Services filed a petition seeking conservatorship of L.M.S. and termination of mother's parental rights. The court appointed the Department as temporary managing conservator, and L.M.S. was placed in a foster home. Mother signed a parenting plan in June 2013, setting forth the steps she needed to accomplish towards

providing L.M.S. with a safe environment within a reasonable time to avoid her rights being restricted or terminated.

Mother testified at trial that she was 18-years-old when she had L.M.S. She was living with L.M.S.'s father at his mother's home when she became pregnant. Father testified at trial that Mother tried to commit suicide by overdosing on drugs while she was pregnant. Both mother and father testified that father physically abused mother before, during, and after her pregnancy with L.M.S. Mother and father moved from father's mother's home to the home of mother's mother before L.M.S. was born. Sometime after L.M.S. was born, father moved out after one of their altercations. Mother and L.M.S. then moved in to a studio apartment provided by a friend, Maria Arismendes.

Mother conceived another child the month before L.M.S. was removed from her care. She was sexually active with several men at that time, so she was unable to identify the father. She testified at trial that most of her contact with these men was at her apartment with L.M.S. present. In December 2013, mother gave birth to a daughter, N.F., who was removed by the Department and placed in a foster care, with different foster parents than L.M.S., as part of a separate case.

L.M.S.'s case worker, Sarah Nash, testified at trial that L.M.S. was developmentally delayed when he came into the Department's care, and that he exhibited behavior that is consistent with that of an abused or neglected child. The

3

Department referred L.M.S. for occupational and physical therapy, as well as follow up medical care for his broken finger.

Although mother completed most of the requirements under her service plan—including attending parenting classes, drug testing, obtaining employment and housing, and attending visits with L.M.S.—Nash testified that she nonetheless was still unable to demonstrate appropriate parenting techniques. Even during supervised visits with her children, she could not supervise or care for L.M.S., nor control her own emotions.

Mother's supervised visits with L.M.S. and N.F. ceased after February 5, 2014 because she was under court order prohibiting contact with L.M.S. (and any other children under the age of 10) as part of a criminal proceeding related to the same injuries to L.M.S. that gave rise to his removal. She was still subject to that order at the time of the underlying trial in April 2014.

L.M.S.'s original foster parents were unwilling to adopt him. In December 2013, when his sister N.F. was born, L.M.S. was moved from his first foster home into the same foster home as his sister. They have thrived in that home, and the foster parents are willing to adopt them both.

At the close of trial, the jury found that the parent-child relationship between mother and L.M.S. should be terminated and that the parent-child relationship

4

between father and L.M.S. should be terminated. The trial court entered judgment on the jury's verdict, and mother appealed.

## ISSUE ON APPEAL

In a single issue, mother argues:

There is legally and factually insufficient evidence to support the termination grounds and best interest and the State did not meet its burden of proof by clear and convincing evidence.

## TERMINATION OF PARENTAL RIGHTS

### A.  Applicable Law

A strong presumption exists that a child's best interest is served by maintaining the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In a case to terminate parental rights under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West 2014).

Relevant to this case, Section 161.001 lists the following as independent grounds for involuntary termination:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

5

(F) failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition;

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:

(i) the department or authorized agency has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment;

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(1).

## B. Standard of Review

Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

In a legal-sufficiency review in a parental-rights-termination case, the appellate court should look at all the evidence in the light most favorable to the

6

finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review of the record, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In conducting a factual-sufficiency review in a parental-rights-termination case, we must determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a factfinder reasonably could have formed a firm conviction or belief about the truth of the matter on which the Department bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 267. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or

conviction, then the evidence is factually insufficient." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

## C. Grounds for Termination

The jury was instructed on five potential grounds for termination, i.e., section 161.001(1)(D) (conditions or surroundings), (E) (conduct), (F) (failure to support), (N) (constructive abandonment), and (O) (failure to complete service plan). *See* TEX. FAM. CODE ANN. § 161.001(1). It rendered a general verdict that the mother's parental rights should be terminated. The same five grounds were cited in the trial court's final Decree for Termination.

Mother's appellant's brief argues that she is "appealing the termination of her parental rights under sections 161.001(1)(D),(E)" and her argument is limited to challenging the sufficiency of the evidence to support termination only under these two grounds. The Department argues that we "need not review [mother's] challenges to subsections (D) and (E), as her brief failed to challenge three other statutory grounds for termination included in the trial court's final decree." We agree with the Department. *See, e.g.*, *In re N.L.D.*, 412 S.W.3d 810, 818 (Tex. App.—Texarkana 2013, no pet.) (holding that, because appellant failed to challenge sufficiency of the evidence to support one of the three section 161.001(1) grounds for termination found by the jury, the court on appeal "need not review her challenges to the sufficiency of the evidence supporting the jury's answers to the

remaining questions because the jury's finding on the first question is sufficient under Section 161.001(1)(F)"); *In re C.P.V.Y.*, 315 S.W.3d 260, 269 (Tex. App.— Beaumont 2010, no pet.) (holding that, because appellant failed to challenge the sufficiency of the evidence to support one of the five section 161.001(1) ground for termination cited by the trial court's judgment, he waived his sufficiency challenge to the section 161.001(1) bases for termination); *Toliver v. Texas Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that the court need not address appellant's sufficiency challenge to one section 161.001(1) finding in support of termination, because appellant failed to challenge the sufficiency of the evidence supporting findings on three other section 161.001(1) grounds).

## D. Best Interest

Mother also challenges the sufficiency of the evidence that termination of her parental rights was in L.M.S.'s best interest.

In *Holley v. Adams*, the Texas Supreme Court provided a nonexclusive list of factors that the factfinder in a termination case may use in determining the best interest of the child. 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the

programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* These factors are not exhaustive, and the Department need not prove all factors as a condition precedent to parental termination. *In re C.H.*, 89 S.W.3d at 27; *Adams v. Tex. Dep't of Family & Protective Servs.*, 236 S.W.3d 271, 280 (Tex. App.— Houston [1st Dist.] 2007, no pet.).

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining whether a parent is willing and able to provide a safe environment, we consider several additional factors, including (1) the child's age and vulnerabilities; (2) developmental evaluations of the child's parents, other family members, and others who have access to the child's home; (3) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (4) willingness and ability of the child's family to seek, accept, and complete counseling services and cooperate with agency supervision; (5) the willingness and ability of the child's family to effect positive changes within a reasonable period of time; and (6) whether the child's family demonstrates

adequate parenting skills. *In re A.C.*, 394 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing TEX. FAM. CODE ANN. § 263.307(b)). Evidence establishing one of the predicate acts under section 161.001(1) also may be relevant to determining the best interest of the child. *see In re C.H.*, 89 S.W.3d at 28. Termination of the parent-child relationship is not justified when the evidence shows that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *Clark v. Dearen*, 715 S.W.2d 364, 367 (Tex. App.—Houston [1st Dist.] 1986, no writ).

Here, there is evidence that L.M.S. lacked a strong bond with mother, and that his emotional and physical needs were not adequately being met in her care. He was developmentally delayed when he was removed and exhibited signs consistent with abuse and neglect. He suffered several unexplained injuries in her care, including bruises, sprains, and broken bones. Mother was inconsistent in her explanations about who cared for L.M.S.

Despite having attended parenting classes, mother was not able to demonstrate an ability to supervise L.M.S. during visits. Specifically, mother was only attentive to him about half the time, failed to notice or intervene if he would run out of the room, and would get very emotional about L.M.S.'s not wanting to be held by her. Mother was unable to articulate what she had learned related to

11

properly caring for a toddler, and had not formulated a plan for caring for L.M.S. Nash, L.M.S.'s case worker, testified to her belief that mother is unable to provide L.M.S. with a safe and stable environment. At the time of trial, as a condition of her bond release on pending family violence charges, mother was prohibited from seeing L.M.S.

In contrast, L.M.S. had formed strong bonds with his foster parents. He calls them "mama" and "dada." He is happy, thriving, and meeting his developmental milestones. L.M.S. is also bonding with his sister, N.F., and his foster parents are willing to adopt both children.

Viewing all of this evidence in the light most favorable to the trial court's judgment and in consideration of the nonexclusive *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of mother's parental rights to L.M.S. was in his best interest. *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, there is legally sufficient evidence to support the best interest finding.

In reviewing the factual sufficiency of the evidence, we also look to the evidence that mother has completed numerous tasks from her service plan, including attending parenting classes, passing drug tests, obtaining housing and employment, and attending visits with L.M.S. and court hearings. While this evidence exhibits some commitment by mother to completing her service

obligations, we nonetheless conclude that—taken with the evidence in favor of termination, especially evidence that she has been unable to demonstrate an ability to care for L.M.S. and the court order prohibiting her from seeing L.M.S.—a reasonable factfinder considering all the evidence could have formed a firm belief or conviction that termination was in L.M.S.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266.

We overrule appellant's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.