COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS


 
 
  
 K.M.,
  
                             Appellant,
  
 v.
  
 TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE
 SERVICES,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-12-00018-CV
  
 Appeal from the
  
 65th
 Judicial District Court
  
 of El
 Paso County, Texas
  
 (TC# 2010CM8329)
  
 
 


O P I N I O N

In this accelerated appeal, Appellant K.M. (Kari)
appeals from the trial court’s order terminating her parental rights to her
child, S.M., and appointing the Texas Department of Family and Protective
Services as S.M.’s sole managing conservator.[1]  We affirm.

BACKGROUND

After S.M. reported that she had been
sexually abused by her stepfather, Brandon, Department Investigator Kristen
Johnson was assigned in May 2010 to investigate the allegations.[2]  Johnson interviewed S.M., Brandon, and S.M.’s
mother, Kari.  S.M. informed Johnson that
she did not believe Kari was aware of Brandon’s abuse, which consisted of
touching S.M. “over and under her clothing, on her breast and on her
butt.”  According to Johnson, Kari was
hostile during the investigation and expressed a disbelief that the sexual
abuse had occurred.  Brandon, however,
admitted touching S.M. a dozen times, over and underneath S.M.’s clothing in
September 2009.  Although Brandon had
begun attending Sex Addicts Anonymous in January 2010, S.M. informed Johnson
that Brandon continued to abuse her thereafter. 
Finding reason to believe that Brandon had sexually abused S.M., Johnson
referred the case to Family-Based Safety Services (FBSS).

In July 2011, Johnson attended the
sentencing phase of a military court-martial proceeding after Brandon had been
tried and found guilty of an offense arising from his sexual misconduct with S.M.[3]  At the sentencing hearing, Kari testified
that she did not believe the sexual-abuse allegations against Brandon and
requested that the court show leniency in sentencing Brandon so that he could
support her and her other children.

Johnson believed Kari’s treatment of S.M.
had endangered S.M.’s emotional and physical well-being.  Johnson stated that over the course of
several interviews with S.M., “[Kari] was telling [S.M.] that it was not a big
deal . . . [and she] was a big girl and she just needed to basically suck it
up.”  She further opined that S.M. had
been both emotionally and physically affected by what had occurred and observed
that Kari “was more upset that she was going to lose her benefits” than she was
concerned for S.M.’s welfare.  Johnson
never observed Kari express compassion or understanding toward S.M.  Rather, Johnson believed that Kari’s
testimony at Brandon’s sentencing hearing indicated that Kari intended to stay
married to Brandon.

Lauren Williams, a supervisor for an
investigative unit at Child Protective Services, participated in an
investigation regarding S.M.’s October 2010, allegation that Kari had
physically abused S.M.  S.M. had
“received” a black eye and reported that her mother had hit her in the face.  Williams assigned investigator Alexandra
Acuna to the physical-abuse case.  S.M.
informed Acuna that she and Kari argued because Kari was angry that Brandon was
being criminally prosecuted, blamed S.M. for “what had gone on,” told S.M. that
it was her fault that the family was having difficulties, and then hit S.M. in
the face.  According to Williams, Acuna had
observed bruising and swelling around S.M.’s eye area consistent with S.M.’s
description of the assault.  Acuna’s
affidavit specified that Kari had been waving her fists in S.M.’s face, that S.M.
had passed out, and had awakened the next morning with a black eye.  Williams concluded that Kari had struck S.M.
and that there was reason to believe that Kari had physically abused S.M.  According to Williams, the incident not only
caused physical endangerment to S.M. but also caused emotional endangerment because
Kari was not supportive of S.M. as a sexual-abuse victim, did not believe the
sexual abuse had occurred, and blamed S.M. for Brandon’s actions.  According to Williams, Kari thereafter placed
S.M. at a runaway shelter from which S.M. ran away a few weeks later.  After she ran away, S.M. informed Acuna that
she was “terrified to go home” and was “scared for her life” because of
Kari.  The Department then “removed”
S.M.  Williams testified that she
believed S.M.’s fear of her mother was valid and S.M. was thereafter “removed.”

The Department’s caseworker assigned to S.M.
since December 2010, Tanya Berry, provided Kari with a court-ordered service
plan which Kari signed and they reviewed together.[4]  Berry testified that Kari had failed to
complete a drug and alcohol assessment and did not attend family therapy with
S.M. as required by the terms of the court-ordered service plan.  Kari moved to Utah in January 2011, but
failed to comply with Berry’s request to provide the Department with
documentation of services that Kari may have obtained in Utah in compliance
with the service plan.  As a consequence,
Berry was unable to ascertain whether Kari had completed her therapy, had
refrained from drug or alcohol use, or had obtained employment or suitable
housing as mandated by the service plan. 
Kari failed to pay court-ordered child support.

According to Berry, Kari failed to comply
with the requirement that she visit with S.M. on a regular basis and stated that
S.M. last saw Kari face-to-face on January 25, 2011, when Berry and S.M. retrieved
some of S.M.’s belongings from Kari’s home. 
Although Kari traveled back to attend Brandon’s court-martial hearing
for a three or four-day period in July 2011, Kari made no effort to see S.M.,
despite the fact that Berry and S.M. were present at the hearing.  Berry related that Kari testified in S.M.’s
presence that she did not believe S.M’s allegations and was concerned about the
welfare of herself and her other children. 
S.M. informed Berry that since Kari moved in January 2011, Kari had sent
messages through Facebook to S.M. which were “never positive” and blamed S.M.
for breaking up the family.  Kari’s
messages did not indicate a desire to see S.M. and Berry related that Kari
failed to maintain contact with S.M. without providing any excuse for such
failure.  With the exception of a single
email in September 2011, in which she expressed dissatisfaction because the
Department had not encouraged S.M. to move to Utah and general dissatisfaction
with Berry’s performance, Kari stopped communicating with Berry after March 2011,
and failed to provide Berry with any information about where she was
living.  In the September 2011 email to
Berry, Kari did not inquire about S.M.’s well-being.  Thereafter, Kari did not return any of
Berry’s email or telephone messages. 
Despite Berry’s weekly emails to Kari, which included another copy of
the service plan, S.M.’s psychological evaluation, temporary orders,
status-hearing orders, and a request for updates on any services Kari may have
obtained in Utah, Kari provided “no response at all.”

S.M. expressed a desire to continue living
with her foster family, and Berry testified that she is extremely supportive of
S.M.’s placement with the foster family and that S.M.’s adoption by the foster
family is part of the Department’s permanency plan for S.M.  According to Berry, Kari has shown no remorse
for her treatment of S.M., has not expressed any future plans in relation to S.M.,
has not demonstrated any parenting ability that shows an appropriate
relationship with S.M., has not been a positive role model for S.M. since the
sexual-abuse allegations, has made S.M. feel at fault for telling the truth and
guilty for the family’s lack of financial support after Brandon was found
guilty at his court-martial proceedings, has been negative, has not shown any
sort of a positive relationship with S.M., and has not made any effort to
establish a positive relationship with S.M. 
Berry described Kari’s behavior as antagonizing and noted that S.M. has
been diagnosed with post-traumatic stress disorder resulting from the sexual
abuse and the relationship with Kari.  S.M.
has required and has been attending therapy on a weekly basis since her
removal.  Berry recommended that Kari’s
parental rights to S.M. be terminated.

The Department filed a
petition for protection of a child, seeking conservatorship of S.M. and
termination of the parental rights of Kari and S.M.’s biological father,
Ryan.  That same day, the trial court
entered an order of protection of a child in an emergency and notice of hearing
by which it removed S.M. from Kari’s care and appointed the Department as
temporary sole managing conservator.  The
trial court found clear and convincing evidence to support termination of
Kari’s parental rights under Sections 161.001(1)(D), (E), (N), and (O) of the
Texas Family Code.  See Tex. Fam. Code Ann.
§§ 161.001(1)(D), (E), (N), and (O) (West 2008).

DISCUSSION

In a proceeding to terminate parental rights, the petitioner
must demonstrate by clear and convincing evidence that:  (1) the parent committed one or more of the
acts specifically set forth in Texas Family Code section 161.001(1) as grounds
for termination; and (2) that termination is in the best interest of the child.
 See Tex. Fam. Code Ann. § 161.001 (West 2008).  “Clear and convincing evidence” means the
measure or degree of proof that “will produce in the mind of the trier of fact
a firm belief or conviction as to the truth of the allegations sought to be
established.”  Tex. Fam. Code Ann. § 101.007 (West 2008); see In re J.F.C.,
96 S.W.3d 256, 263 (Tex. 2002); see also In re J.A.J., 243 S.W.3d 611,
616 (Tex. 2007) (contrasting the standards applied in termination proceedings
and the standards applied in modification proceedings).  We strictly scrutinize termination
proceedings and construe any statutes authorizing involuntary termination in
favor of the parent.  Holick v. Smith, 685 S.W.2d 18, 20-21
(Tex. 1985).

Kari presents five issues for our
determination, which we address in the following order.  In Issues Two, Three, and Four, Kari
challenges the sufficiency of the evidence to terminate her parental
rights.  In Issue Five, Kari complains
that the trial court erred in finding factually-sufficient evidence that
termination was in the best interest of S.M. 
In her first issue, Kari complains that the trial court plainly erred
when it considered caseworker testimony that the child had been diagnosed with
post-traumatic stress disorder, and that the error in reasonable probability
prejudiced Kari as the evidence was insufficient to support the termination of
her parental rights.

Sufficiency Standards of Review

When reviewing legal sufficiency challenges to termination
findings, we consider all of the evidence in the light most favorable to the
finding “to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its finding was true.”  In re J.P.B., 180 S.W.3d 570, 573 (Tex.
2005), quoting In re J.F.C., 96 S.W.3d at 266.  We give deference to the fact finder’s
conclusions and presume the fact finder resolved any disputed facts in favor of
its findings, so long as a reasonable fact finder could do so.  Id.; In re J.F.C., 96 S.W.3d at 266.  We disregard any evidence that a reasonable
fact finder could have disbelieved, or found to have been incredible, but we do
not disregard undisputed facts.  In re
J.P.B., 180 S.W.3d at 573; In re J.F.C., 96 S.W.3d at 266.



In reviewing the evidence for factual sufficiency, we must
give due deference to the fact finder’s findings, and we cannot supplement such
judgment with our own.  In re H.R.M.,
209 S.W.3d 105, 108 (Tex. 2006).  We
determine whether, “in light of the entire record, the disputed evidence that a
reasonable factfinder could not have credited in favor of the finding is so
significant that a factfinder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient.”  In re H.R.M., 209 S.W.3d at 108; In
re J.F.C., 96 S.W.3d at 266.

Statutory
Ground for Termination

            In Issue Two, Kari challenges the factual sufficiency of
the evidence to support the termination of her parental rights under Section
161.001(1)(D) and (E) of the Texas Family Code and contends the evidence was legally
insufficient to support the trial court’s finding because there was no direct
evidence of Kari’s specific conduct by which she endangered or abused S.M.  Tex.
Fam. Code Ann. § 161.001(1)(D), (E) (West 2008).  In Issue Three, Kari similarly contends that
the evidence was factually insufficient to support the trial court’s
termination of her parental rights under Section 161.001(1)(O) and also
challenges the legal sufficiency of the evidence due to lack of direct evidence
of Kari’s conduct resulting in endangerment or abuse of S.M.  In Issue Four, Kari challenges the
sufficiency of the evidence to support the trial court’s termination order upon
a finding that Kari constructively abandoned S.M.  However, only one predicate violation under
Section 161.001(1) is necessary to support a termination decree.  Tex.
Fam. Code Ann. § 161.001(1) (West 2008); In re D.M., 58 S.W.3d
801, 813 (Tex.App.–Fort Worth 2001, no pet.); In re S.F., 32 S.W.3d 318, 320 (Tex.App.–San Antonio 2000, no
pet.); see also Texas Dep’t. Human
Services v. E.B., 802 S.W.2d 647, 649 (Tex. 1990) (op. on reh’g).  Because we conclude the evidence is legally
and factually sufficient to support the trial court’s finding under Section
161.001(1)(E) as challenged in Issue Two, we need not address Kari’s remaining
sufficiency challenges relating to Section 161.001(1) as raised in Issues Two,
Three, and Four.  Id.

Under Section 161.001(1)(E)
of the Texas Family Code, the judge was required to find by clear and
convincing evidence that Kari “engaged in conduct or knowingly placed the child
with persons who engaged in conduct which endangers the physical or emotional
well-being of the child.” Tex. Fam. Code
Ann. §§ 161.001(1)(E) (West 2008). 
“To endanger” means to expose a child to loss or injury or to jeopardize
a child’s emotional or physical health.  See In re M.C., 917 S.W.2d 268, 269
(Tex. 1996); Walker v. Tex. Dep’t of
Family and Protective Services, 312 S.W.3d 608,
616-17 (Tex.App.–Houston [1st Dist.] 2009, pet. denied); Robinson v.
Tex. Dep't of Protective & Regulatory Servs., 89 S.W.3d 679, 686
(Tex.App.–Houston [1st Dist.] 2002, no pet.), citing Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531,
533 (Tex. 1987).  The term means “more
than a threat of metaphysical injury or the possible ill effects of a
less-than-ideal family environment . . . .” 
Boyd, 727 S.W.2d at 533.  While
endangerment often involves physical endangerment, the statute does not require
that conduct be directed at a child or cause actual harm; rather, it is
sufficient if the conduct endangers the child’s emotional well-being.  Id.;
In re U.P., 105 S.W.3d 222, 233
(Tex.App.–Houston [14th Dist.] 2003, pet. denied); Robinson, 89 S.W.3d at 686.  Thus,
the court’s inquiry encompasses acts that endanger a child’s physical or
emotional well-being, or both.  See Boyd, 727 S.W.2d at 534; Smith v. Sims, 801 S.W.2d 247, 250
(Tex.App.–Houston [14th Dist.] 1990, no pet.).

The relevant inquiry for
a subsection (E) termination is whether evidence exists that the endangerment
was the direct result of the parent’s conduct, including acts, omissions, and
failures to act.  In re J.T.G., 121 S.W.3d 117, 125 (Tex.App.–Fort Worth 2003, no pet.).  Termination requires a voluntary, deliberate,
and conscious course of conduct; it must be based on more than a single act or
omission.  Id.; In re J.W.,
152 S.W.3d 200, 205 (Tex.App.–Dallas 2004, pet. denied).  It is not necessary that the parent’s conduct
be directed at the child or that the child actually suffer injury.  Boyd, 727 S.W.2d at 533; In re
J.T.G., 121 S.W.3d at 125.

Endangerment of a child’s well-being may be inferred from parental
misconduct, including conduct that subjects the child to a life of uncertainty
and instability.  Boyd, 727 S.W.2d
at 533; In re R.W., 129 S.W.3d 732, 738-39 (Tex.App.–Fort Worth 2004,
pet. denied).  The parent-child
relationship, and efforts to improve or enhance parenting skills, are relevant
in determining whether a parent’s conduct results in endangerment under
subsection (E).  See In re D.T.,
34 S.W.3d 625, 640 (Tex.App.–Fort Worth 2000, pet. denied).

In this case, there is evidence of a physical assault by Kari with her
fists upon S.M. as well as evidence that S.M. awoke the following morning with
a “black” eye.  Included in the
evidence before the trial court was testimony that Kari disbelieved S.M.’s
allegations of sexual assault, even after Brandon admitted to and a jury found
him guilty of committing the acts, had blamed S.M. for Brandon’s action, had
informed S.M. that the sexual assaults were “not a big deal,” and had left S.M.
at a runaway shelter.  Evidence that Kari
testified that she did not believe S.M.’s allegations and sought leniency on
his behalf in S.M.’s presence at Brandon’s trial permits an inference that Kari
intended to stay with Brandon, despite his victimization of S.M.  Compare
Schaban-Maurer v. Maurer-Schaban, 238 S.W.3d 815, 824 (Tex.App.–Fort Worth
2007, no pet.) (evidence that a person has engaged in abusive conduct in the
past permits an inference that the person will continue violent behavior in the
future).  Abusive and violent criminal conduct by a
parent can produce an environment that endangers the well-being of a
child.  In the matter of B.R., 822 S.W.2d 103, 106 (Tex.App.–Tyler 1991,
writ denied).

Considering all of the evidence in the light most favorable
to the finding, we conclude that the trial court, as a reasonable trier of fact,
could have formed a firm belief or conviction that its finding that Kari engaged
in conduct which endangers S.M.’s physical and emotional well-being was true.  In re J.P.B., 180 S.W.3d 570, 573 (Tex.
2005), quoting In re J.F.C., 96 S.W.3d at 266.  This ground of the trial court’s termination order
is supported by legally-sufficient evidence. Tex. Fam. Code Ann. § 161.001(1)(E) (West 2008).

We also conclude that there is sufficient evidence from
which a rational trier of fact could have formed a firm belief or conviction
that Kari engaged in a course of conduct endangering S.M.’s physical and
emotional well-being.  In re H.R.M.,
209 S.W.3d at 108; In re J.F.C., 96 S.W.3d at 266.  This ground of the termination order is
therefore supported by factually-sufficient evidence as well.  Tex.
Fam. Code Ann. § 161.001(1)(E) (West 2008).  We overrule Issue
Two.

Best
Interest of Child

In Issue Five, Kari contends
that the trial court erred in finding that the evidence was factually
sufficient to support a finding that termination of Kari’s parental rights was
in the best interest of S.M.  We
disagree.

            There is a strong
presumption that a child’s best interests are served by maintaining the
parent-child relationship.  In re L.M.,
104 S.W.3d 642, 647 (Tex.App.--Houston [1st Dist.] 2003, no pet.).  The Texas Supreme Court has
identified nine non-exhaustive factors that are relevant in determining whether
termination of parental rights is in the best interest of the child.  Holley
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).[5]  The
determination of a child’s best interest does not require proof of any unique
set of factors, and it does not limit proof to any specific factors.  Id.

            The same
evidence of acts or omissions used to establish grounds for termination under
Section 161.001(1) may be probative in determining whether termination of
parental rights is in the best interest of the child.  In re C.H., 89 S.W.3d 17, 28 (Tex. 2002);
In re L.M., 104 S.W.3d at 647.  Termination
of the parent-child relationship is not justified when the evidence shows
merely that a parent’s failure to provide a more desirable degree of care and
support of the child is due solely to misfortune or the lack of intelligence or
training, and not to indifference or malice.  Clark v. Dearen, 715 S.W.2d 364, 367
(Tex.App.–Houston [1st Dist.] 1986, no writ).

            Neither Kari
nor S.M. presented testimony at the termination hearing.  Caseworker Berry testified that it was S.M.’s
desire to continue living with her foster family.  Berry stated that she was extremely
supportive of S.M.’s placement within the foster family’s home and noted that
the foster family wishes to adopt S.M.  Kari
presented no evidence of her plans for S.M. if S.M. was returned to her
custody.

            The evidence
demonstrates that Kari physically abused S.M. on one occasion resulting in
unconsciousness and a blackened eye, left S.M. at a runaway shelter on another
occasion, and demonstrated a pattern of endangerment to the emotional
well-being of S.M. in part by refusing to believe that the sexual assaults upon
S.M. occurred despite Brandon’s confession that he committed the criminal acts
upon S.M. and blaming S.M. for Brandon’s commission of the sexual assaults upon
S.M.  Berry, Johnson, and Williams each
testified that Kari’s conduct had emotionally endangered S.M.’s
well-being.  Berry also testified that
S.M. had been diagnosed with post-traumatic stress disorder in relation to the
events with Brandon and Kari, that S.M. is in therapy sessions on an
almost-weekly basis, and that such therapy is necessary in the future.

            Despite
opportunities to visit with S.M. during Brandon’s trial, Kari made no effort to
speak with S.M. who was also present at the trial in July 2011.  Prior to that opportunity, Kari and S.M. had
not visited with each other since January 2011, and, as of the termination
proceedings in December 2011, Kari had not visited S.M. again.  Kari did not comply with the Department’s
service plan which she had reviewed and signed, did not maintain contact with
the Department as required, and failed to respond to the Department’s repeated
requests for documentation of services she may have completed in Utah after
moving there.  Kari presented no evidence
that she had requested that S.M. be removed from the foster family after March
2011, and Berry testified that Kari never proposed a permanency plan for S.M.’s
future living arrangements.

            In light of
all of the evidence, the trial court could have reasonably formed a firm belief
or conviction that termination of Kari’s parental rights was in the best
interest of S.M.  In re H.R.M., 209 S.W.3d at 108; In re
J.F.C., 96 S.W.3d at 266. 
Issue Five is overruled.

Erroneous Admission of Evidence

            We last
address Issue One, in which Kari complains that the trial court erred in
receiving testimony regarding S.M.’s diagnosis of post-traumatic stress
disorder.  To preserve a complaint for
our review, the record must show that the complaint was presented to the trial
court by a timely motion, request, or objection in compliance with Rule
33.1(a).  Tex. R. App. P. 33.1(a); Holcombe
v. Reeves County Appraisal District, 310 S.W.3d 86, 90 (Tex.App.–El Paso
2010, no pet.).  Because Kari failed to
object to this evidence, she has failed to preserve her complaint for our
review.  Issue One is overruled.

CONCLUSION

The judgment of the trial court is affirmed.

 

                                                                        GUADALUPE
RIVERA, Justice

November 19, 2012

 

Before McClure, C.J., Rivera, J., and Antcliff, J.











[1]
Appellant’s brief refers to Kari, mother of S.M.
as “K.M.,” and Appellee’s brief refers to the child, S.M., as “K.M.”  For clarity, we do not refer to either the
parent or the child as “K.M.”

 





[2]
Caseworker Tanya Berry’s Family Service Plan for Substitute Care notes that an
uncle sexually assaulted S.M. when she was approximately nine years old.





[3]
Johnson also testified during the guilt-innocence phase of that proceeding.





[4]
Berry related that when S.M. was three years old, she and her brother were
placed in foster care as a result of her parents’ substance abuse.  S.M.’s father, Ryan, then left the family and
had no further contact with S.M.





[5]
The nine, non-exhaustive Holley
factors are:  (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parenting abilities of the parties seeking custody; (5) the programs
available to assist the parties seeking custody; (6) the plans for the child by
the parties seeking custody; (7) the stability of the home or proposed placement;
(8) the acts or omission committed by the parent which may indicate the
existing parent-child relationship is not a proper one; and (9) any excuse for
the acts or omissions committed by the parent. 
Holley, 544 S.W.2d at 371-72.